**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ELECTRICAL CONTRACTORS, INC.** | : |
| **PLAINTIFF,** | : |
| | : **CIVIL ACTION NO. 3:11cv1432(VLB)** |
| | : |
| **v.** | : **DECEMBER 3, 2012** |
| | : |
| **INSURANCE COMPANY OF THE** | : |
| **STATE OF PENNSYLVANIA** | : |
| **DEFENDANT.** | : |

<u>**ORDER CERTIFYING QUESTIONS TO THE CONNECTICUT SUPREME COURT**</u>

This Court has the discretion to certify a question of law to the Connecticut Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state" pursuant to Conn. Gen. Stat. §51-199b.  Although courts "may ordinarily interpret ambiguous state statutes using the normal rules of statutory interpretation, even in the absence of controlling state authority," certification may be appropriate if other "factors strongly suggest that we defer to the Connecticut Supreme Court." *Sealed v. Sealed,* 332 F.3d 51, 59 (2d Cir. 2003).

The Second Circuit has indicated that the following factors provide helpful guidance in assessing whether to certify a question to the Connecticut Supreme Court: "(1) whether 'Connecticut has a compelling interest' in the issue presented by the case; (2) whether the statutory provision at issue 'forms only one part of a detailed administrative scheme' in an area of law 'in which the federal courts have little familiarity or expertise'; and (3) whether the 'question of statutory

interpretation implicates the weighing of policy concerns,' especially if such policy concerns are expressed in the statutory scheme." *Davis v. Mara*, 587 F.Supp.2d 422, 427 (D. Conn. 2008) (quoting *Sealed*, 332 F.3d at 59).   These factors are not "exhaustive of considerations a court may use" but instead provide helpful guidance.  *Id.*

The Second Circuit has emphasized that "[w]here a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *Sealed*, 332 F.3d at 59.  The Second Circuit explained that "[n]otably, the Connecticut Supreme Court has recently indicated that it adopts a broad approach to statutory interpretation that looks beyond the statutory text 'to the legislative history and circumstances surrounding [the statute's] enactment, to the legislative policy [the statute] was designed to implement, and to [the statute's] relationship to existing legislation and common law principles governing the same general subject matter.'" *Id.* (quoting *State v. Courchesne,* 262 Conn. 537, 577, 816 A.2d 562 (2003)). Therefore, "the Connecticut Supreme Court may well exercise more flexibility and broader interpretive power than the federal courts in analyzing the meaning" of a particular statute.  *Id.* (internal quotation marks and citations omitted).  This Court is persuaded that all three criteria have been met in the instant case warranting certification to the Connecticut Supreme Court.

The dispute at issue arises over the interpretation of Conn. Gen. Stat. §49-42(a).  "Under Connecticut law, a municipality contracting for work in excess of $100,000 is required to obtain a labor and material bond.  The statutory

framework adopted by Connecticut models the federal Miller Act and is often referred to as the 'Little Miller Act.'" E*merson-Swan, Inc. v. Harrington Engineering, Inc.*, No.DBDCV106004228S, 2011 WL 2417381, at *5 (Conn. Super. Ct. May 13, 2011). "[Connecticut] General Statutes §§ 49–41 through 49–43, which provide for the furnishing of bonds guaranteeing payment (payment bonds) on public works construction projects, were enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens ... Section 49–41 requires that the general contractor provide a payment bond with surety to the state or governmental subdivision, which bond shall guarantee payment to those who supply labor and materials on a public works project ... Section 49-42 provides that any person who has performed work or supplied materials on a public works project, but who has not received full payment for such materials or work, may enforce his right to payment under the payment bond." *Id.*

At particular issue is the meaning of the following provision of Section 49-42(a):

> The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. If the content of notice prepared in accordance with subsection (b) of section 49-41a complies with the requirements of this section, a copy of such notice, served within one hundred eighty days of the payment date provided for in subsection (a) of section 49-41a upon the surety that issued the bond and upon the contractor named as principal in the bond, shall satisfy the notice requirements of this section. *Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any*

3

*unpaid portion of the claim.* The notices required under this action shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment.

Conn. Gen. Stat. §49-42(a) (emphasis added).  The Plaintiff argues that Section 49-42 is a waiver provision whereby a surety's failure to either pay, assert a good faith dispute to, or deny a subcontractor's claim within 90 days constitutes a waiver of all the surety's defenses, entitling the claimant to a judgment for the full amount of the payment bond claim.  Contrastly, the Defendant argues that Section 49-42 does not impose any ineluctable penalty for such a failure, but instead entitles the claimant to file a suit for judicial adjudication of the claim, upon the expiration of the 90 day deadline, to recover payment on the bond, together with costs, interest and reasonable attorney fees.[1]

The Plaintiff points to a 2000 Connecticut superior court decision in support of its interpretation.  *Barreira Landscaping & Masonry v. Frontier Ins. Co.,*

---

[1] Defendant's interpretation is comparable to other statutory schemes in which inaction on the underlying claim is deemed an exhaustion of remedies providing a right to initiate suit on the underlying claim.  *See e.g.,* 49 U.S.C. §20109(d)(3) permits a claimant under the Federal Rail Safety Act to bring an original action at law for de novo review in an appropriate district court if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint to the Secretary; 29 C.F.R. §2560.503-1 and 29 U.S.C. §1132 provides that in the case of the failure of an ERISA plan to establish or follow claims procedures consistent with ERISA regulations, the claimant "shall be deemed to have exhausted the administrative remedies available under the plan" and shall be entitled to bring a civil action to recover benefits due under the plan; *see also Escalera v. Commissioner of Social Sec.*, 457 F. App'x. 4, 6 (2d Cir. 2011) (noting that an "[A] plaintiff's failure to exhaust administrative remedies [under the Social Security Act] can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm.") (internal quotation marks and citation omitted).

47 Conn. Supp. 99 (Conn. Super. Ct. 2011).   In *Barreira*, the Superior Court, ruling in a matter of first impression, held that a surety's compliance with the 90 day period under Section 49-42 for providing notice of denial of claim was mandatory and that noncompliance resulted in the "automatic approval of payment to the plaintiff subcontractor." *Id.* at 110.   In reaching this conclusion, the *Barreira* court analogized to administrative law noting that "the result that has uniformly emanated from our case law when a mandatory statutory time limit has been violated in the context of administrative law, has been to invalidate the action of the particular agency which  committed the violation," and therefore "if the action of an administrative agency in denying an application for a specified form of relief is null and void because of failure to comply with a mandatory time limit, the legal effect is that the relief requested is granted."  *Id.* at 111. The *Barreira* court concluded that "it does not matter whether the surety's denial of the plaintiff's claim was in bad faith or without substantial basis in law or in fact. The surety's failure to act within the prescribed ninety day period was equally illegal and the plaintiff is entitled to the relief sought in its notice of claim." *Id.*

The Defendant argues that numerous Connecticut superior court decisions have declined to follow *Barreira* whereas the Plaintiff argues that Connecticut courts have consistently interpreted the ninety-day time limit as mandatory and no court, state or federal, has contradicted or countermanded these decisions. However, none of the caselaw that either Plaintiff or Defendant cites squarely or thoroughly addressed the question at issue besides the *Barreira* decision. *Barreira* appears to be the only case on point.  Furthermore, no Connecticut

Appellate or Supreme Court decisions have interpreted this particular section of Connecticut's Little Miller Act.

In the instant case, there is no doubt that the answer to the question of law certified will be determinative of an issue in the pending litigation and there is no controlling appellate decision, constitutional provision or statute.  Although this Court may interpret an ambiguous state statute, the factors identified by the Second Circuit strongly suggest that deferring to the Connecticut Supreme Court is warranted in the instant case despite Defendant's objections.  Defendant argues that certification is not appropriate because the language of Section 49-42 is clear and unambiguous as it fails to provide any penalty or remedy.  However, Defendant's argument is unpersuasive as the ambiguity results from this very fact that the statute does not expressly provide a remedy or penalty and therefore this Court could not resolve the dispute solely by reference to the text of the statute.  This Court would necessarily have to weigh public policy issues attendant to public infrastructure contracting to determine what remedy results from a surety's failure to meet the 90 day deadline.  Because the instant question of statutory interpretation implicates the weighing of policy concerns, "the principles of comity and federalism strongly support certification."  *Sealed*, 332 F.3d at 59.

Connecticut clearly has a compelling interest in the issue presented by this case as Connecticut's Little Miller Act undeniably affects the public's interest in public works and municipal finance.  *See Royal School Laboratories, Inc. v. Town of Waterton*, 236 F.Supp. 950, 955 (D.Conn. 1965), rev'd on other grounds, 358

F.2d 813 (1966) ("The mandatory requirement of a payment bond, however, has as its primary purpose the protection of those in the position of the plaintiff-at-bar from the failures and insolvencies of contractors on public projects.  It may also serve to encourage an increased number of competitive bids from subcontractors and materialmen because of the assurance of payment…").  As the Second Circuit recognized in connection with the federal Miller Act which Connecticut's act is modeled on "while the United States has an interest in the payment of all persons furnishing labor and materials to government projects, it also has an interest in the prompt settlement of accounts between contractors and subcontractors and in avoiding undue and preventable losses to contractors and their sureties— costs which in the long run the public pays."  *U.S. for Use and Benefit of J.A. Edwards Co. v. Thompson Const. Corp.*, 273 F.2d 873, 876 (2d Cir. 1959).   Here, Connecticut has an interest in the payment of subcontractors furnishing material and labors on municipal public works.  It appears that the detailed notice and payment-denial claim provisions of Section 49-42 were implemented to assure prompt settlement of accounts to avoid undue and preventable losses and delays which in the long run the citizens of Connecticut pay through the increased cost of municipal finance.

Notably, in 2006 the Connecticut legislature proposed legislation which would have essentially codified the *Barreira* decision by adding the following language to Section49-42: "Failure of the surety to either pay or identify the portion of the claim that is subject to a good faith dispute within such ninety-day period shall operate as a waiver of such surety's defenses to the entire claim."

Raised Bill No. 493, LCO No. 2468, 2006.  This bill was never adopted and its legislative history provides no insight as to why.  The proposed legislation further illustrates that this is a matter of important public concern in which Connecticut has a compelling interest.

Lastly, Section 49-42's 90 day provision clearly forms only one part of a detailed administrative scheme as reflected in the complex statutory framework of the Little Miller Act as provided in Sections 49-41 through 43.   A federal court sitting in diversity has little familiarity or expertise in connection with this detailed administrative scheme underlying the furnishing and satisfaction of payment bonds on public works construction projects.

As the parties are asking the federal court to determine an important issue of state law, certification is patently appropriate.  This conclusion is underscored by the fact that the Defendant has invited this Court to overturn the superior court's decision in *Barreira* on an important issue of state law.  The Second Circuit has "long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process." *Parrot v. Guardian Life Ins. Co. of America,* 338 F.3d 140, 144 (2d Cir.2003).   As the parties do not agree on certification, this Court is sensitive to and understands the demands of dealing with uncooperative parties.  However, this Court is persuaded that uncooperative parties would not burden the Connecticut Supreme Court because there is no important disagreement on the underling facts of this case.  The particular facts of the instant matter are mostly irrelevant to the questions of law at issue.   Moreover, if this Court did not certify

the question and the losing party appealed to the Second Circuit, the Second

Circuit would likely certify the question itself to the Connecticut Supreme Court.

In sum, under the factors identified by the Second Circuit and pursuant to Conn.

Gen. Stat. §51-199b, this Court finds that certification is warranted.

I.  **The following questions of law are certified to the Connecticut Supreme Court:**

Because the parties have presented unsettled and significant questions of

state law that will control the outcome of this case, this Court certifies the

following questions to the Connecticut Supreme Court:

Question 1:

(a) Is a surety's failure to meet the 90 day deadline under Section 49-42 deemed to be an exhaustion of remedies entitling claimants to bring suit for an adjudication of their claim or

(b) Does the failure to meet the 90 day deadline operate as a waiver of a surety's defenses directing the Court to enter judgment for the claimant in the full amount of the claim?

Question 2:

Does a surety's request for further information to substantiate a claim constitute:
(a) a "denial" of the claim under Section 49-42, or
(b) a "good faith dispute" of the claim under Section 49-42?

This Court invites the Connecticut Supreme Court to construe liberally and,

if necessary, expand the certified questions to address related or other relevant

issues in connection with this appeal.   This Court will retain jurisdiction over the

case once the Supreme Court has either ruled on the certified questions or has

declined certification.

**II.**   **Facts relevant to these questions, showing fully the nature of the controversy out of which the questions arose:**

As noted above, there are no disputed facts relevant to the question certified.  However in order to aid the Connecticut Supreme Court and pursuant to Conn. Gen. Stat. §51-199b, the Court will provide a brief description of the relevant facts as part of this certification order.  The Defendant surety issued a $33.7 million dollar labor and materials payment bond for its principal, the Morganti Group ("Morganti"), in July 2009.  [Dkt. #48, p.4].  Morganti was the general contractor on the Newtown High School Additions Renovations Project. *Id.*  The Plaintiff, Electrical Contractors Inc. ("ECI") entered into a subcontract with the Morganti to provide labor, equipment and materials relating to the electrical work for the project.  *Id.*  On April 27, 2011, ECI submitted to Morganti a request for equitable adjustment to the subcontract price in the sum of $751,190.63 as a result of additional costs incurred allegedly as a result of Morganti's deficient performance.  *Id.* at 5.  On May 9, 2011, ECI updated and adjusted it claim to Morganti to $746,300.25.   Morganti failed to respond to ECI's claim.  *Id.*

On June 3, 2011, ECI sent by certified mail to Defendant Insurance Company of the State of Pennsylvania ("ICSP") notice of its claim pursuant to Conn. Gen. Stat. §49-42.  *Id.*  ICSP received ECI's notice of claim on June 10, 2011.  *Id.*  On June 13, 2011, ICSP sent ECI a letter acknowledging receipt of claim and requesting additional information from ECI to substantiate the claim.  *Id.* at 6.  By letter dated July 1, 2011, ECI responded to ICSP's request for additional

information.  ECI provided the requested documentation despite its belief that it had fully complied with Section 49-42's requirements for payment.  *Id.*  ICSP responded by letter dated July 6, 2011 acknowledging receipt of ECI's further documentation.  ICSP indicated that it was taking the matter up with Morganti to ascertain its position on the claim.   *Id.*  On September 16, 2011, ECI brought the instant suit in this Court which was 98 days after ICSP's receipt of ECI's initial claim on June 10, 2011 but only 72 days after ICSP's acknowledgment of receipt of ECI's further documentation on July 6, 2011.

III.    <u>Names and Addresses of Counsel</u>:

Pursuant to Conn. Gen.Stat. § 51–199b(f)(4), the names and addresses of counsel are as follows:

Counsel for Plaintiff:

Paul Randall Fitzgerald
Michelson Kane Royster & Barger- ColumbusBlvdHtfd
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106
860-522-1243
Fax: 860-548-0194
Email: pfitzgerald@mkrb.com

Steven B. Kaplan
Michelson Kane Royster & Barger- ColumbusBlvdHtfd
Hartford Square North
10 Columbus Blvd.
Hartford, CT 06106
860-522-1243
Fax: 860-548-0194
Email: skaplan@mkrb.com

**Counsel for Defendant:**

> **Frank Audemars Sherer , III**
> **McElroy, Deutsch, Mulvaney & Carpenter/PH, LLP**
> **One State Street**
> **14th Floor**
> **Hartford, CT 06103**
> **860-241-2637**
> **Fax: 860-522-2796**
> **Email: fsherer@mdmc-law.com**

> **Gary F. Sheldon**
> **McElroy, Deutsch, Mulvaney & Carpenter/PH, LLP**
> **One State Street**
> **14th Floor**
> **Hartford, CT 06103**
> **860-241-2623**
> **Fax: 860-522-2796**
> **Email: gsheldon@mdmc-law.com**

> **Todd R. Regan**
> **Robinson & Cole, LLP-HTFD**
> **280 Trumbull St.**
> **Hartford, CT 06103**
> **860-275-8293**
> **Fax: 860- 275-8299**
> **Email: tregan@rc.com**

**<u>Conclusion</u>**

**Based upon the above reasoning, the Court finds certification to the Connecticut Supreme Court appropriate in the instant matter.  It is hereby ordered that the Clerk of the Court shall transmit to the Connecticut Supreme Court under the official seal of this Court  a copy of the Court's Certification Order, and all or any part of the record in this case that may be requested by the Connecticut Supreme Court for its use in deciding the questions certified.**

The parties are hereby ordered to supply the Clerk no later than January 3, 2013, with eight copies of those pleadings and briefs filed in the instant matter that are necessary for the Connecticut Supreme Court's consideration of the certified questions.  See Conn. R. App. Proc. §82-4 (requiring eight (8) copies of all documents relating to the questions certified).  The Court will also direct the Clerk to administratively close this matter pending the Connecticut Supreme Court's ruling on the certified questions or its declination of certification.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: December 3, 2012